Filed 5/23/22  P. v. Cornejo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>ADAM CORNEJO,<br><br>    Defendant and Appellant. | C093331<br><br>(Super. Ct. No. 11F00582) |

Defendant Adam Cornejo appeals from the trial court's order denying his petition for resentencing under Penal Code section 1170.95.[1]  Defendant argues he was convicted of murder and attempted murder under the natural and probable consequences doctrine based on the language in the trial court's jury instruction on implied malice and was thus

---

[1] Undesignated statutory references are to the Penal Code.

eligible for relief under the statute. In supplemental briefing, defendant further contends that the passage of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) requires reversal and remand for a hearing on whether he stated a prima facie case under amended section 1170.95, subdivision (c). We will affirm the trial court's order.

## BACKGROUND

In 2012, a jury found defendant guilty of one count of second degree murder (§ 187; count one), four counts of attempted murder (§§ 664, 187; counts two through five), and one count of shooting at an inhabited dwelling (§ 246; count six). (*People v. Cornejo* (2016) 3 Cal.App.5th 36, 42 (*Cornejo*).) The jury found the murder was committed by shooting a firearm from a motor vehicle at another person outside the vehicle with the intent to inflict great bodily injury (§ 190, subd. (d)). (*Cornejo*, at p. 42.) "The jury also found the crimes were committed for the benefit of, at the direction of, or in association with, a criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members. (§ 186.22, subd. (b).) Various firearm enhancement allegations were also found to be true. (Former §§ 12022.53, subds. (c), (d), (e)(1), 12022.5, subd. (a).)" (*Ibid.*)

In our opinion deciding defendant's direct appeal, we summarized the facts of the case.[2] In short, the victim, along with four companions, was in his wife's car returning to his house from the store. (*Cornejo, supra*, 3 Cal.App.5th at pp. 44-45.) "Before the car came to a stop in the driveway, an SUV driven by [codefendant] Jesse Cornejo slowly drove past [the victim's] house; the SUV's front and backseat passengers, [defendant] and Isaac Vasquez, opened fire on [the victim's] car. Neal [(a passenger in the victim's

---

[2] We incorporate this opinion by reference as part of defendant's record of conviction (*People v. Woodell* (1998) 17 Cal.4th 448, 456), which the trial court could consider in its prima facie review. (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)

car)] managed to return fire with [the victim's] gun before the SUV drove away. About 20 bullets were exchanged between the vehicles. Bullets also struck [the victim's] house. [The victim] was the only casualty." (*Id.* at pp. 41-42, fn. omitted.) Defendant and codefendants were apprehended shortly thereafter, and gunshot residue tests "corroborated the fact that [defendant] and Isaac were the shooters, while Jesse drove the Explorer." (*Id.* at p. 46.)

On appeal, defendant challenged, among other issues, the jury instruction on murder, CALCRIM No. 520, saying the court read an outdated bracketed section of the instruction. As relevant here, a portion of the jury instruction explained the concept of implied malice, saying, " 'A defendant acted with implied malice if, one, he intentionally committed an act. [¶] Two, the natural and probable consequences of that act are dangerous to human life. Three, at the time he acted, he knew his act was dangerous to human life, and, four, he deliberately acted with conscious disregard for human life.' "[3] (*Cornejo, supra*, 3 Cal.App.5th at p. 59, fn. 6.) We rejected defendant's challenge, explaining, "there was no dispute [the victim] died of a single gunshot wound. This was the direct, but-for cause of death. Overwhelming evidence established both [defendant] and Isaac fired into [the victim's] car. Who fired the fatal shot is irrelevant. As our Supreme Court explained: 'A person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet. For example, in *People v. Sanchez* [(2001)] 26 Cal.4th 834, two persons engaged in a gun battle, killing an innocent bystander. Who fired the fatal bullet, and thus who personally inflicted the harm, was unknown, but we held that the jury could find that *both* gunmen proximately caused the death. (*Id.* at pp. 848-849.)' (*People v. Bland* (2002) 28 Cal.4th 313, 337.)

---

[3] The implied malice portion of the instruction was not part of defendant's challenge in the direct appeal, which centered on the issue of proximate causation.

3

The same is true here . . . the jury properly concluded both [defendant] and Isaac proximately caused the death regardless of who fired the fatal shot. . . . As for Jesse, liability for murder turned on principles of aiding and abetting, on which the jury was appropriately instructed." (*Id.* at pp. 61-62.) We ultimately reversed the gang enhancement findings, along with the firearm enhancements predicated on the gang enhancement findings, based on *People v. Prunty* (2015) 62 Cal.4th 59, and affirmed the judgment as modified. (*Cornejo,* at pp. 43, 75.)

In 2019, defendant, through counsel, filed a petition for resentencing under section 1170.95. In the petition, defendant alleged he met the requirements for relief, specifically, that (1) an information filed against him allowed the prosecution to proceed under a theory of murder under the natural and probable consequences doctrine, (2) he was convicted of second degree murder under the natural and probable consequences doctrine, and (3) he could not now be convicted of first or second degree murder because of changes to sections 188 and 189, effective January 1, 2019. The court received briefing from the parties. Defendant argued section 1170.95 applied to him because "[t]he prosecution proceeded against [him] on a natural and probable consequence theory, to wit, implied malice," and noted that the implied malice jury instruction required defendant to commit an act "[t]he natural and probable consequences" of which "were dangerous to human life." (Italics & boldface omitted.) Defendant further argued section 1170.95 applied to his convictions for attempted murder.

The trial court issued a written order denying the petition. The court cataloged the relevant jury instructions at trial, saying the "jury was instructed with: (1) CALCRIM No. 401, on direct aiding and abetting, (2) CALCRIM No. 520 on malice aforethought murder, (3) CALCRIM No. 521 on first degree murder (of which defendant Adam Cornejo was found not guilty), (4) CALCRIM No. 525 on the punishment provision of [section] 190[, subdivision] (d) for a drive-by shooting committed with intent to inflict great bodily injury, for consideration after already being found guilty of second degree

4

murder, and (5) CALCRIM No. 600 on attempted murder, as requiring a direct act toward the killing and intent to kill that person. None of these instructions contained language pertaining either to felony-murder or the natural and probable consequences doctrine of accomplice liability."[4]

Noting defendant's argument as to the implied malice instruction in CALCRIM No. 520, the court explained "[Senate Bill No.] 1437 did not abrogate implied malice, the jury instruction for which does contain the words 'natural and probable consequence' but in a different context from that of the natural and probable consequences doctrine of accomplice liability. Rather, [Senate Bill No.] 1437 abrogated only the theory of accomplice liability that is based on the defendant intending to aid and abet an accomplice in the commission of a different, target offense, the natural and probable consequence of which would be murder in the specific case. Defendant Adam Cornejo's jury was not instructed on the latter." And, as to defendant's attempted murder convictions, the court stated, "the jury also was not instructed on either felony-murder (which is inapplicable to attempted murder) or the natural and probable consequences doctrine of accomplice liability, [so defendant] similarly is not a person to whom [section] 1170.95 applies. As such, the court need not decide whether any defendant convicted of attempted murder is categorically precluded from seeking relief under [section] 1170.95." The court thus denied the petition.

---

[4] We grant the People's request to incorporate the appellate record in defendant's previous appeal, case No. C072053. Our review of the jury instructions in that record confirms the accuracy of the trial court's representations concerning the instructions.

**DISCUSSION**

*A.      Governing Law*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which became effective on January 1, 2019, was enacted to amend the felony-murder rule and the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish this, the bill amended section 188 to require that a principal act with express or implied malice and amended section 189 to state that a person can only be liable for felony murder if (1) the "person was the actual killer"; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, §§ 2, 3.) "The effect of the new law was to eliminate liability for murder under the natural and probable consequences doctrine." (*People v. Offley* (2020) 48 Cal.App.5th 588, 594; see also *People v. Gentile* (2020) 10 Cal.5th 830, 838-839 [case law and Senate Bill 1437 have eliminated the natural and probable consequences doctrine's applicability to murder in the first and second degree].)

Senate Bill 1437 also added section 1170.95 to provide the resentencing petition process for a "person convicted of felony murder or murder under a natural and probable consequences theory."[5] (§ 1170.95, former subd. (a).) As amended, subdivision (a) allows a petitioner to "file a petition with the court that sentenced the petitioner to have

---

[5] More recently, Senate Bill 775, which became effective January 1, 2022, made various amendments to section 1170.95. (Stats. 2021, ch. 551, § 2.) Defendant requested, and was granted, an opportunity to submit supplemental briefing on these amendments.

6

the petitioner's murder [or] attempted murder . . . conviction vacated and to be resentenced . . . when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine . . . or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder [or] attempted murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

At the time the trial court considered defendant's petition, section 1170.95 did not expressly permit a petition for resentencing on convictions for attempted murder. (§ 1170.95, former subd. (a).) However, Senate Bill 775 amended subdivision (a) of section 1170.95 to include those convicted of "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2.) Thus, certain petitioners convicted of attempted murder are now eligible to seek relief under section 1170.95.

After a defendant submits a petition, the court must decide whether the defendant has stated a prima facie case for eligibility. (§ 1170.95, subd. (c).) As explained by our Supreme Court in *Lewis, supra*, 11 Cal.5th at page 966, "section 1170.95, subdivision (c) does not envision a structure by which courts can make an initial determination without briefing and without the appointment of counsel. Instead, there is a much more logical interpretation of this provision, and it is the one we adopt here: a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one (not two) prima facie determination." (Fn. omitted.)

To determine whether a petitioner has made a prima facie case for relief, the court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations

7

were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 971.)

B.     *Defendant's Eligibility for Relief*

Defendant argues the trial court incorrectly denied his petition because he was prosecuted and convicted under the natural and probable consequences doctrine. In particular, defendant cites the jury instruction on implied malice from his trial, which included the requirement that "[t]he natural and probable consequences of the act were dangerous to human life," and concludes the jury was instructed on the natural and probable consequences doctrine. (Italics & boldface omitted.) Defendant further argues his attempted murder convictions are not categorically barred from relief under section 1170.95, particularly in light of Senate Bill 775. We see no merit in defendant's arguments.

Section 1170.95 applies to those convicted of felony murder or murder under the natural and probable consequences doctrine. (§ 1170.95, subd. (a).) Defendant is incorrect that the "natural and probable consequences" language from CALCRIM No. 520 demonstrates he was prosecuted under that doctrine. Rather, the jury instructions from defendant's trial show that defendant was prosecuted and convicted under a theory of implied malice. A person acts with implied malice "when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) Mirroring this language from case law, defendant's jury instruction on implied malice included the

8

phrase "natural and probable consequences." (*Cornejo, supra*, 3 Cal.App.5th at p. 59, fn. 6.)

However, the instruction's use of this phrase is separate and distinct from the natural and probable consequences doctrine. "Although the instructions related to implied malice and the natural and probable consequences doctrine of aiding and abetting include similar language . . . they are distinctly different concepts. Implied malice is a mental state for the commission of the crime of second degree murder, either by the principal or as an aider and abettor." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056.) "The natural and probable consequence doctrine, by contrast, is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime. This doctrine comes into play when 'an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).' [Citation.]" (*Id.* at p. 1058.) "[W]hen the prosecutor relies on the natural and probable consequence doctrine as to a defendant charged as an aider and abettor, the trial court must give an instruction ' "identify[ing] and describ[ing] the target crimes that the defendant might have assisted or encouraged." ' " (*People v. O'Malley* (2016) 62 Cal.4th 944, 989.) Thus, the use of the phrase "natural and probable consequences" in the implied malice jury instruction does not mean that defendant was convicted under the natural and probable consequences doctrine, which would require specific jury instructions not given here.

Defendant further contends the trial court erred when it denied his petition as to his attempted murder convictions because Senate Bill 1437 "bars natural and probable consequences as a theory of liability for attempted murder as well as murder." In supplemental briefing, defendant points to Senate Bill 775's amendments to section 1170.95 to establish his eligibility for relief.

As the trial court explained, however, it does not matter whether section 1170.95 permits relief for attempted murder convictions under the natural and probable

9

consequences doctrine because defendant's attempted murder convictions were not based on the natural and probable consequences doctrine. Defendant's jury did not receive instructions on the natural and probable consequences doctrine, and were instead instructed on attempted murder using CALCRIM No. 600, which requires a direct step toward killing the victim, coupled with the intent to kill the victim. And, as explained above, the implied malice portion of CALCRIM No. 520 was not an instruction on the natural and probable consequences doctrine. The jury could not have convicted defendant using a theory on which it was never instructed. (*People v. Soto, supra*, 51 Cal.App.5th at pp. 1058-1059.) Defendant was not entitled to relief under section 1170.95 because he was not convicted under a theory of felony murder or the natural and probable consequences doctrine.

Finally, defendant contends that the amended version of section 1170.95 requires that he receive a hearing to determine whether he has stated a prima facie case for relief, which he did not receive when the trial court originally considered his petition. Under these circumstances, however, the trial court's failure to hold such a hearing was harmless. "To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)" (*People v. Porter* (2022) 73 Cal.App.5th 644, 651.) As explained above, the record precludes defendant's ability to show he was eligible for relief under section 1170.95. No hearing would change this conclusion and defendant does not explain why it is reasonably probable he would have obtained a better result had he received one. Thus, any error was harmless.

10

## DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is affirmed.

/s/
HOCH, J.

We concur:

/s/
RAYE, P. J.

/s/
DUARTE, J.

11